MINNIE HAAR, Appellant, *v.* INDUSTRIAL BENEFIT ASSOCIATION, Respondent.

*Life insurance — disputed claim under a policy — accord and satisfaction — ratification by the beneficiary of a settlement made by another as her agent.*

In an action brought against a benefit association upon a certificate of life insurance, by the beneficiary, the evidence showed that after the death of the insured, payment was disputed by the association, and an adjustment was made by the husband of the beneficiary, as agent of his wife, with the agent of the association, for a settlement by payment of a less amount than that claimed, and that a paper to that effect was signed by the husband in his own name and that of the beneficiary, and the policy surrendered to the association; that the beneficiary had knowledge that her husband was about to negotiate with the agent of the association with a view to adjusting the claim and obtaining thereon what money could be secured by way of settlement ; that shortly after the adjustment was made between the husband and the agent of the association, the beneficiary had information of its details and understood the facts and circumstances relating thereto, and thereafter received from the association, through her husband, a bank draft for the amount which had been agreed upon by the husband and the agent of the association, made payable to her order, which she indorsed and cashed.

*Held,* that the testimony justified the conclusion that the beneficiary ratified the act of her husband in making the adjustment of the disputed claim, by accepting the fruits thereof with knowledge of the material facts, even if she had not given explicit authority, or exact directions as to the adjustment ; and, hence, that a nonsuit was properly directed by the trial court.

APPEAL by the plaintiff, Minnie Haar, from a judgment of the Supreme Court dismissing the complaint, entered in the office of the clerk of Oneida county on the 14th day of January, 1893, upon a nonsuit directed by the court at the close of the evidence at the Oneida Circuit.

The action was brought to recover the amount payable under a certificate of insurance issued by the defendant, payable to the plaintiff named therein as beneficiary. After proofs of death were delivered to the company, its agent went to the residence of the plaintiff in the city of Utica, on Sunset avenue, had an interview with her and she referred him to her husband upon the subject of an adjustment of the claim made upon the certificate ; he held an interview with the husband, and by an appointment, known to the plaintiff, met the husband the next day at the office of

the local agent, Wagner, of the defendant, and near the close of that interview, the husband and the agent came to an adjustment, which was evidenced by a writing signed by the husband in his own name and in the name of his wife. The instrument read as follows :

"This agreement, made this 26th day of March, 1892, in settlement of claim on certificate No. 2,088 on the life of Annie Knuth. Mamie Haar, beneficiary, agrees to accept the sum of one hundred dollars, in full settlement and compromise on said certificate, and upon payment of said sum agrees to receipt in full said policy and return same to said Industrial Benefit Association or their agent in the city of Utica, N. Y.

"MINNIE HAAR.

"W. P. COLVIN.    "HERMAN HAAR."

Subsequent to the execution of that paper, and on March 28, 1893, the president and secretary of the company executed a sight order on the treasurer of the defendant for the sum of $100, and at the foot of that order are these words; "This order payable only when accompanied by policy No. 2,088 properly receipted." The policy had indorsed upon it as of the 30th day of March 1892, a receipt for the $100, and the policy was delivered to the defendant with the receipt subjoined. There is some dispute as to the execution of that receipt, as to whose handwriting it was in, but the policy was surrendered to the company, and thereupon the defendant caused to be issued a draft drawn by the cashier of the First National Bank of Syracuse, bearing date April 2, 1892, for $100, payable to the order of Mamie Haar, and addressed to the First National Bank, N. Y. The draft was delivered to the local agent, Wagner, who, in a day or two thereafter, delivered the same to the husband, and the husband in a few days delivered the same to his wife, who took the same and went to the store of Moore & Schuderer, where she was accustomed to buy goods, near her house, indorsed the same, and it went forward and was collected, she having received from Moore & Schuderer the money. Subsequently, and apparently about the twelfth of April, the plaintiff applied to her attorney, who communicated with the officers of the defendant, who informed the attorney that the claim had been adjusted, and that subsequently this action was brought. Plaintiff appeals from the judgment.

*L. N. Southworth,* for the appellant.

*Walter S. MacGregor,* for the respondent.

HARDIN, P. J.:

Plaintiff called as a witness Lambert, the secretary and general manager of the defendant, who testified that the proof of death was received by the defendant February 5, 1892, and that after the proof was received the company paid $100 on the claim; he also disclosed the correspondence that had ensued between the company and the attorney for the plaintiff just prior to the commencement of this action; that the company took action upon the proof and rejected the claim. He also testified that Colvin, the agent of the company, visited the city of Utica for the purpose of adjusting the claim, and that he made a report to the company of the result of his investigations, and that the company had received the agreement as to a compromise and a return of the certificate, and the execution by the defendant of its order on its treasurer, bearing date the 28th of March, 1892, and that the company received the policy by mail from the treasurer and approved it, and returned it to the treasurer; that thereupon the draft for $100, issued by the First National Bank, was obtained. He also testified that the agreement of March twenty-sixth was delivered to the company by Mr. Colvin after visiting Utica, and that thereupon the company made its order upon its treasurer for the payment of the $100 to the plaintiff, and that it was forwarded by mail. It appears the bank draft was sent to Wagner, the local agent of the defendant in the city of Utica, and in a day or two after receiving the same he delivered the same to the husband of the plaintiff, and the husband of the plaintiff delivered the same to his wife, and the wife indorsed it and used it to obtain the money on it, and did not restore the money before the commencement of this action. Inasmuch as this witness was called in behalf of the plaintiff his testimony is to be accepted as entitled to belief. Upon looking into the evidence given by the witness Colvin and the witnesses Herman Haar and the plaintiff herself, it seems to be quite clearly established that the husband had an interview prior to the execution of the paper of the twenty-sixth of March, with the agent, and met him by appointment at the office of Wagner, and that while in the office of Wagner there was quite a

discussion over the amount of this claim and an adjustment of it. It seems that Colvin raised some question about the validity of the claim, and, according to the testimony of Herman Haar, the husband of the plaintiff, Colvin first offered to pay five dollars for every one that had been paid towards the policy, and that that offer Haar declined to accept, and thereupon Colvin offered him fifty dollars for the claim, and Haar declined "to do anything of the kind;" and the appeal book shows further as to that interview as follows: "Then he and Mr. Wagner went into another side room and had a conversation and Wagner called me in there; Wagner says, ' You had better settle with him, or you won't get anything at all;' Colvin says, 'I will make it $75;' I says, 'Can't you go any more?' He says, 'No;' I says, 'Can't you give about what the old lady cost? She has cost about $300 now;' 'Well,' says he, 'that has nothing to do with our company;' 'Well,' I says, ' she was transferred from the Rochester company into your company. You were anxious to get her;' he says, 'I will make it $100. The company won't allow me to do that, and if I report that I have paid you $100, off goes my head.' I said I would accept the $100 under protest. Says he, 'All right, I will write a paper here and you sign it;'" thereupon the agreement to accept $100 was made out and signed by Haar in his own name and in the name of his wife, and witnessed by Colvin. Haar testifies: "After talking with Mr. Colvin at the office he drew that agreement, and I agreed to accept the $100 in settlement; after that agreement was made I signed it for my wife; well, .yes, I signed it understanding that I represented my wife; the next morning after I had signed this I told my wife about what I had done; I told her I had signed it for $100." When the plaintiff, the wife, was upon the stand she testified her husband "told me in the morning that he had made an appointment to meet him down at the company's office and talk it over; that he was going to see about a settlement; when he came back he told me that he had settled; I said, 'What made you? You didn't have any authority to settle.' He said he had settled for $100; he didn't say anything about signing an agreement; I did not ask him where the money was; he didn't tell me whether he got the $100 or not." She also testified that the draft for $100, dated April 2, 1892, was delivered to her, and that she made an indorsement thereon and

got the money on it; she adds, "I knew what it was for; it was told to me by my husband; he told me when I took it away from him; he had it in his pocket for two days; he told me it was a check for $100 from the insurance company on this policy." It was admitted upon the trial that "she knew when she took that and indorsed it that the money was from the insurance company." She also testified: "My husband told me in the morning that he was going down to see about the settlement of that claim. I understood that was the object of his going down. Q. It was to get the matter compromised if he could? A. Yes, sir."

After a careful perusal of all the evidence it is quite apparent that the adjustment was made by the husband as the agent of the wife, and that she had knowledge that he was to enter into negotiation with Colvin with a view of adjusting the claim and obtaining thereon what money could be secured by way of a settlement, and that shortly after the adjustment was made between the husband and Colvin, that she had information of the details thereof, and understood the facts and circumstances relating to the adjustment before she received the draft, which was made payable to her order, and indorsed by her, and upon which she received the money. All the testimony justifies a belief that she ratified the act of the husband in making the adjustment; she acquiesced in it; she adopted the draft by an indorsement thereof and actually received the money. Even if it be assumed that she had not given explicit authority or exact directions as to the adjustment, yet as she was made aware of the adjustment and accepted the fruits of it, she ratified the settlement.

In *Owings* v. *Hull* (9 Pet. 629), it is said "that the ratification of an act of an agent previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud." This doctrine has been reasserted in *Seymour* v. *Wyckoff* (10 N. Y. 213), and numerous other cases. We think the evidence found in the appeal book brings the case within the principle alluded to, and that the plaintiff is bound by the adjustment made. The essential facts which give rise to the conclusion that there was a ratification are not the subject of dispute or contradiction. *Nossoiy* v. *Tomlinson* (20 N. Y. Supp. 384), cited by the appellant, differs from the

case before us, as in that case the party had received what "was no more than his due" with full notice "that it was not accepted in full," and that it was applied in part payment of the indebtedness. Our attention is called to *Ryan* v. *Ward* (48 N. Y. 204), which was a case where there was a payment of a portion of an undisputed account, and a receipt was given in full, and it was held that a party was not precluded from recovering the balance. In the case before us there was such a dispute as to the claim prior to the consummation of the adjustment, as to distinguish it from the case just cited. If the trial judge had permitted the case to pass to the jury, and a verdict had been found upon the evidence in favor of the plaintiff, it is probable that the same views that led him to grant the nonsuit would have induced him to have set the verdict aside as against the weight of evidence. Under such circumstances, we think the direction given at the Circuit by the learned trial judge should be sustained.

MERWIN and PARKER, JJ., concurred.

Judgment affirmed, with costs.